## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**STEPHANIE MADDUX,**

        Plaintiff**,**

   **v.**

**YORK INTERNATIONAL CORPORATION d/b/a JOHNSON CONTROLS,**
     Registered Agent:
     The Corporation Company, Inc.
     112 SW 7th Street, Suite 3C
     Topeka, KS 66603

  **-and-**

**JOHNSON CONTROLS, INC.**
     Registered Agent:
     The Corporation Company, Inc.
     112 SW 7th Street, Suite 3C
     Topeka, KS 66603

     Defendants**.**

**JURY TRIAL DEMANDED**

**Civ. No.: _____**

## COMPLAINT

Plaintiff Stephanie Maddux ("Plaintiff" or "Maddux") by and through her attorneys, for her cause of action against Defendants York International Corporation d/b/a/ Johnson Controls and Johnson Controls, Inc. (collectively "Defendants") as follows:

## INTRODUCTION

1.     This is an action under Title VII, the Family Medical Leave Act ("FMLA") and the Americans with Disabilities Act ("ADA") challenging the wrongful employment practices and retaliation directed at Plaintiff Stephanie Maddux.

2.      Plaintiff was terminated shortly after complaining to Human Resources about discrimination she experienced based on her medical conditions, use of FMLA leave, and gender. Defendants informed Plaintiff they needed to reduce their work force and selected Plaintiff for termination rather than a lesser qualified male employee of much shorter tenure who Plaintiff was still training.

3.      Plaintiff's claims arise out of discrimination, disparate treatment, and retaliation Plaintiff suffered as a result of her gender, disabilities, and use of FMLA leave.

## PARTIES

4.      Plaintiff is a United States citizen, presently residing in La Cygne, Kansas.

5.      During all times relevant to this Demand, Plaintiff was an "employee" within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111(4) and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e(f), and Plaintiff was an "eligible employee" within the meaning of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611(4).

6.      Defendants are companies authorized to conduct business, have registered agents, and may be properly served in the State of Kansas. Defendant York International Corporation's and Defendant Johnson Controls' principal offices are located in Milwaukee, Wisconsin.

7.      At all times relevant to this action, Defendants were authorized to conduct business in the State of Kansas and were doing business in the State of Kansas.

8.      At all times relevant to this action, Defendants qualified as an "employer" within the meaning of the ADA, 42 U.S.C. § 12111(5), Title VII, 42 U.S.C. § 2000e(b), and the FMLA, 29 U.S.C. § 2611(4).

9.  Defendants' employees, supervisors, and agents, at all times herein relevant, acted on Defendants' behalf, as Defendants' agent, with actual or apparent authority, and/or Defendants approved, condoned, or ratified their conduct.

## JURISDICTION AND VENUE

10.  This Court has subject matter jurisdiction over this controversy under 28 U.S.C. § 1331, because it involves claims that arise under federal statutes, the ADA, 42 U.S.C. 12101 *et seq.;* Title VII, 42 U.S.C. 2000e, *et seq.;* and the FMLA, 29 U.S.C. § 2601, *et seq.*

11.  This Court has personal jurisdiction over Defendants because Defendants maintain minimum contacts within the state of Kansas by operating a business in Wichita, Kansas, in Sedgwick County, which lies within the United States District of Kansas.

12.  Under 28 U.S.C. 1391(b), venue is proper in this Court because Defendants own and/or manage a facility in Sedgwick County, Kansas, which lies within the District of Kansas. Further, venue is proper in this Court because a substantial part of the events giving rise to Plaintiff's claims occurred within this judicial district, Plaintiff was employed by Defendants within this judicial district, and Defendants' violations occurred within this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13.  On or about February 25, 2020, Plaintiff timely dual filed a Charge of Discrimination with the Kansas Human Rights Commission ("KHRC") and Equal Employment Opportunity Commission ("EEOC") against each Defendant on the basis of sex and disability discrimination and retaliation. *See **Charges of Discrimination***, Ex. A and Ex. B.

14.  On or about May 5, 2021, the EEOC issued to Plaintiff her Notices of Right to Sue. Plaintiff's Complaint was filed within 90 days of Plaintiff's receipt of the EEOC's Notices of Right

to Sue, which entitles Plaintiff to commence an action regarding her claims. *See **Notices of Right to Sue***, Ex. C and Ex. D.

15.     The aforementioned Charges of Discrimination provided the EEOC and KHRC sufficient opportunity to investigate the full scope of the controversy between the parties. Accordingly, the scope of this Complaint may be, and is, as broad as the scope of an EEOC/KHRC investigation that could have been reasonably expected to grow out of the Charge of Discrimination.

16.     Accordingly, Plaintiff has satisfied all private, administrative, and judicial prerequisites to the commencement of this action.

<u>**GENERAL ALLEGATIONS COMMON TO ALL COUNTS**</u>

17.     The preceding paragraphs are fully incorporated as though fully set forth herein.

18.     Plaintiff worked for Defendants at their facility in Wichita, Kansas from approximately May 30, 2017, to January 23, 2020, when Defendants terminated her employment.

19.     Plaintiff worked as a UPG Maintenance Operation Technician ("Maintenance Technician").

20.     Throughout her employment with Defendants, Plaintiff was a valuable and dedicated employee who successfully performed her duties with the company.

21.     During the hiring process, Plaintiff had applied for the position with the E-Tech group. As part of the hiring process, she interviewed with the entire E-Tech team.

22.     Approximately six months after Plaintiff was hired, Keith Bishop, one of the individuals Plaintiff had interviewed with, told her that the company had made them hire a female, and Plaintiff was only selected because she was the most qualified female, despite the fact that the

group had voted against her. Mr. Bishop emphasized to Plaintiff that she was not the E-Tech group's first choice.

23.     Throughout her employment, Plaintiff was the only female who worked her shift, and Mr. Bishop reiterated the fact that she was not the group's first choice several times.

24.     Plaintiff's supervisor, Wayne Bowman, consistently treated Plaintiff less favorably than other employees.

25.     Approximately a month before Plaintiff's employment began, Defendants had hired another Maintenance Technician by the name of Cliff Whitson.

26.     Plaintiff soon began to feel that she was being treated differently than Mr. Whitson.

27.     There was no formal training process for the position, and Plaintiff struggled to learn the fundamentals of her role. Mr. Bowman trained and assisted Mr. Whitson but showed little interest in training Plaintiff. Mr. Bowman regularly trained Mr. Whitson on how to perform a task and left it to Mr. Whitson to teach Plaintiff.

28.     When Plaintiff began her employment with Defendants, she informed Mr. Bowman that she had some heath issues that she believed were related to her thyroid. Plaintiff had been diagnosed with hypothyroidism in 2011. The condition weakened Plaintiff's immune system, making her more susceptible to illness.

29.     In January 2018, Plaintiff began to experience health problems related to her condition. Plaintiff missed a few days of work throughout January and used sick leave to cover the time off.

30.     Around this time, Mr. Bowman's treatment of Plaintiff began to deteriorate. Mr. Bowman commented that Plaintiff was taking excessive absences and stated, "maybe this just isn't the job for you."

31.     Mr. Bowman would reprimand Plaintiff for being sick too frequently. When Plaintiff would ask a question, Mr. Bowman would treat it like she was an inconvenience to him. Sometimes he would slam the door and walk out. Around this time, Mr. Whitson also began to take periodic absences, but he was never treated similarly to Plaintiff.

32.     Concurrently with Mr. Bowman's harsh treatment of Plaintiff, Mr. Whitson also began to treat Plaintiff poorly. Mr. Whitson began cussing at Plaintiff. Mr. Whitson also began making comments about Plaintiff's relationship with her boyfriend. He once told her that if she stopped talking to her boyfriend so much then maybe she would catch onto things faster.

33.     Plaintiff found the comments highly inappropriate, as she would only ever talk to her boyfriend during breaks. Plaintiff found the comments inappropriately related to her gender as well, as many of the other employees were in relationships.

34.     When Plaintiff complained to Mr. Bowman in April 2018 about Mr. Whitson repeatedly cussing her out, Mr. Bowman simply brushed her complaint aside by saying "oh great" and looked at her in disgust. Plaintiff continued to deal with hostile behavior from both Mr. Bowman and Mr. Whitson.

35.     In August 2018, Plaintiff contracted mononucleosis and missed two days of work. When Plaintiff didn't have enough sick leave to cover her absences, Mr. Bowman escorted Plaintiff to Human Resources. Chris Eagle, Human Resources Manager, told Plaintiff that if she had health problems and needed more days off that she would have to apply for leave through the Family Medical Leave Act ("FMLA").

36.     In Mid-September 2018 Plaintiff received a standard performance review by Mr. Bowman. Despite the fact that her work performance was good, Mr. Bowman gave her a rating of "Inconsistently Meeting Expectations."

37.     Mr. Bowman failed to inform Plaintiff at the time of her performance review that employees who receive the "Inconsistently Meeting Expectations" rating are not eligible for raises. Plaintiff was therefore ineligible for a raise, although she did not learn about the effect on her pay until approximately July of 2019, when the raises for 2019 took effect.

38.     Plaintiff continued to suffer mistreatment at work, particularly from Mr. Whitson who began to get so angry at Plaintiff that she feared for her safety. Things escalated when Mr. Whitson became so angry with her that he stated that she was a worthless piece of shit and he hated working with her.

39.     Although Plaintiff had verbally complained about Mr. Whitson's behavior on multiple occasions, on September 21, 2018, Plaintiff emailed Mr. Bowman to make a formal complaint about Mr. Whitson's behavior.

40.     Mr. Bowman took Plaintiff to Human Resources where she reported Mr. Whitson's behavior to Mr. Eagle.

41.     Ultimately nothing came of the complaint; it did not appear that Mr. Whitson was reprimanded in any way. Rather, three days after Plaintiff made her complaint, Mr. Bowman stated to her that he and Mr. Eagle had concluded that Mr. Whitson's behavior was not the problem and that she needed more training.

42.     On October 4, 2018, Plaintiff was approved to take one FMLA day a week due to anxiety, partially associated with the mistreatment that she was experiencing at work. Her doctor also limited her hours to 45 per week as opposed to the 50 hours that she would frequently work. Plaintiff began to periodically take FMLA approved leave.

43.     Immediately after Plaintiff was approved for FMLA leave and began utilizing it, Mr. Bowman began tampering with Plaintiff's schedule, resulting in her once reliable schedule

becoming unpredictable and inconsistent. Additionally, Mr. Bowman informed Plaintiff soon after that she would stop receiving paid lunches from the company in contravention to prior practices.

44.     In November 2018, Plaintiff began reporting the treatment that she was experiencing at the hands of Mr. Bowman to Tom Martin and Tom Unruh, who were both Mr. Bowman's superiors. Plaintiff explained that Mr. Bowman was treating her differently than everyone else, that he was rude to her, slammed doors, and was generally hostile towards her. After this point, Plaintiff began to consistently complain to Mr. Unruh when Mr. Bowman was hostile to her. Plaintiff continued to tolerate Mr. Bowman's hostile attitude.

45.     In June 2019, Plaintiff's FMLA leave was increased to three days a week due to anxiety. Plaintiff's anxiety was related to the hostile work environment she was forced to tolerate to keep her job.

46.     Mr. Bowman would make comments about Plaintiff's use of the FMLA such as: "Yeah, I figured she'd be sick today." Additionally, when Plaintiff used her FMLA leave to take a day off, Mr. Bowman's hostile attitude would increase towards her the following day. Mr. Bowman would slam doors, ignore questions, and generally act in an aggravated manner towards Plaintiff.

47.     Plaintiff was a key performer and helped her department receive a certificate of achievement for excellence by replacing/upgrading approximately 250 thin clients (small computers used for testing the HVAC units) during the month of July 2019.

48.     Shortly thereafter, Plaintiff learned that she was not eligible for her 2019 raise as a result of the poor performance review Mr. Bowman had given her in September 2018.

49.     Plaintiff was very disappointed to learn that she would not be getting her scheduled raise and felt Mr. Bowman's poor review from September 2018 was not only inaccurate but was

intended to retaliate against her for taking leave and was unfairly critical of her because of her gender. The denial of her raise was particularly troubling to her because it so closely followed her extensive work efforts for the thin client upgrading project and her recent recognition for those efforts.

50.     Also in July 2019, Mr. Bowman called a meeting with Mr. Unruh to attempt to get Plaintiff placed on a performance improvement plan, despite Plaintiff's success on the job. Mr. Bowman claimed that Plaintiff's performance had deteriorated when she learned that she was not getting a raise.

51.     Although Plaintiff had made her displeasure at not getting a raise known, her performance had not deteriorated. Mr. Unruh understood Plaintiff's frustration at not getting a raise and did not allow Mr. Bowman to place her on a performance improvement plan. Mr. Unruh also agreed to try to get Plaintiff a performance raise outside of the annual raise cycle.

52.     In September 2019, Mr. Bowman gave Plaintiff another performance review where he rated her as "Inconsistently Meeting Expectations." Plaintiff was the only one in her department whom he rated so poorly.

53.     Both Mr. Bowman and Plaintiff were aware that this would result in her being denied another scheduled raise. Mr. Bowman's demeanor during the performance review was smug. At the end of the meeting, Mr. Bowman stated "Tom [Unruh]'s not going to get you your extra pay either."

54.     On or about September 12, 2019, Plaintiff filed a formal complaint with Human Resources alleging a hostile work environment, gender discrimination, and FMLA retaliation. The complaint was handled by Chris Eagle. Plaintiff was forced to continue to work with Mr. Bowman throughout the investigation process.

55.     In early December 2019, Mr. Eagle told Plaintiff that while there was evidence to support her complaint, the company had decided not to do anything about it since Mr. Bowman was retiring in the end of January 2020. Plaintiff was forced to continue working with Mr. Bowman following the termination of the investigation. Mr. Eagle would not allow Plaintiff to see the report he had sent to corporate.

56.     On January 23, 2020, Mr. Unruh and Mr. Eagle called Plaintiff to Human Resources. There, they told her that the department was downsizing. Mr. Unruh told Plaintiff that they had to cut the group by 30%. Mr. Unruh told Plaintiff that he understood that she had "had issues" on the job and that they felt like letting her go was a good decision.

57.     Plaintiff, an employee of two-and-a-half years, was chosen to be terminated over the new hire, Andrew Hill, who Plaintiff was training at the time of her termination.

## COUNT I
### Title VII Discrimination - Gender

58.     Plaintiff hereby incorporates each and every allegation and averment in this Complaint as if though fully set forth herein.

59.     Defendants discriminated against Plaintiff in the terms and conditions of her employment on the basis of her protected group status (female), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*. as amended.

60.     Plaintiff is a female who was employed by Defendants. By virtue of her sex, Plaintiff is a member of a class of persons protected by Title VII.

61.     Plaintiff Maddux was qualified for her job as a Maintenance Technician. She successfully performed the requirements of her job.

62.     Ms. Maddux was denied training that was offered to other male Maintenance Technicians.

63.     Defendants subjected Plaintiff to an adverse employment action when Mr. Bowman gave her poor performance ratings that did not reflect her actual performance, thereby denying her raises. Plaintiff was also subjected to an adverse employment action when Defendants terminated her employment.

64.     Plaintiff was one of only two female UPG Maintenance Operation Technicians at the Wichita, Kansas facility. Similarly-situated male Maintenance Technicians were not given negative performance reviews. Plaintiff was selected for termination over a less qualified male Maintenance Technician with significantly less experience who Plaintiff was training.

65.     Defendants knew or should have known of the disparate and negative treatment and failed to take appropriate action to prevent such differential treatment.

66.     As a direct and proximate result of Defendants' actions and/or inactions, Plaintiff was deprived of income, as well as other benefits, both monetary and non-monetary.

67.     As a direct and proximate result of Defendants' actions and/or inaction, Plaintiff has suffered humiliation, damage to her self-esteem, emotional distress, mental anguish, and related compensable damage.

68.     Defendants failed to make good faith efforts to establish and to enforce policies that would prevent unlawful discrimination against its employees, including discrimination on the basis of sex.

69.     Defendants failed to properly train and/or otherwise inform their supervisors and employees of their duties and obligations under applicable civil rights laws including Title VII.

70.     Through its failure to take prompt effective remedial action, in effect, Defendants condoned, ratified, and/or authorized the discrimination and harassment against Plaintiff.

71.     Defendants' conduct was willful, wanton, malicious, and showed a complete indifference to or conscious disregard for the rights of others, including Plaintiff's rights. Thus, an award of punitive damages is warranted in an amount that is sufficient to punish or to deter Defendants and others from like conduct in the future.

**WHEREFORE**, Plaintiff requests that the Court enter judgment in her favor and against Defendants for such damages, actual, nominal, and punitive as are fair and reasonable, for her reasonable attorney's fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

## COUNT II
### Title VII Gender Discrimination – Harassment/Hostile Work Environment

72.     Plaintiff hereby incorporates each and every allegation and averment in this Complaint as if though fully set forth herein.

73.     Defendants discriminated against Plaintiff in the terms and conditions of her employment on the basis of her protected group status (female), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*. as amended.

74.     Plaintiff is a female who was employed by Defendants. By virtue of her sex, Plaintiff is a member of a class of persons protected by Title VII.

75.     Defendants subjected Plaintiff to unwelcome harassment that affected a term, condition, and/or privilege of her employment, by subjecting her to intimidating, hostile, or offensive behavior, and by giving her negative performance ratings because of her sex.

76.     Plaintiff's working environment was permeated with discriminatory intimidation, which she was subjected to throughout the workday on a daily basis; those who subjected Plaintiff to the discriminatory intimidation include her co-workers and her immediate supervisor.

77.     The harassment altered the conditions of Plaintiff's employment and created an abusive working environment.

78.     Plaintiff's status as a female was the motivating factor behind Defendants' harassment of Plaintiff.

79.     Defendants knew or should have known of the harassment and failed to take appropriate action to prevent such harassment.

80.     As a direct and proximate result of Defendants' actions and/or inactions, Plaintiff was deprived of income, as well as other benefits, monetary and non-monetary.

81.     As a direct and proximate result of Defendants' actions and/or inactions, Plaintiff suffered humiliation, damage to her self-esteem, emotional distress, mental anguish, and related compensable damage.

82.     Defendants failed to make good faith efforts to establish and to enforce policies that would prevent unlawful discrimination against their employees, including discrimination on the basis of sex.

83.     Defendants failed to properly train and/or otherwise inform their supervisors and employees of their duties and obligations under applicable civil rights laws, including Title VII.

84.     Through Defendants' failure to take prompt and effective remedial action, in effect, Defendants condoned, ratified, and/or authorized the discrimination and harassment against Plaintiff.

85.     Defendants' conduct was willful, wanton, malicious, and showed a complete indifference to or conscious disregard for the rights of others, including Plaintiff's rights. Thus, an award of punitive damages is warranted in an amount that is sufficient to punish or to deter Defendants and others from like conduct in the future.

**WHEREFORE**, Plaintiff requests that the Court enter judgment in her favor and against Defendants for such damages, actual, nominal, and punitive as are fair and reasonable, for her reasonable attorney's fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

<u>COUNT III</u>
**Title VII Gender Discrimination – Unlawful Retaliation**

86.     Plaintiff hereby incorporates each and every allegation and averment in this Complaint as if though fully set forth herein.

87.     In violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* as amended, Defendants retaliated against Plaintiff by treating her in a manner designed to discourage the opposition of discriminatory conduct. Defendants retaliated against Plaintiff as a direct result of her opposition to unlawful practices. Ultimately, Defendants terminated Plaintiff in retaliation of her opposition to discrimination.

88.     While Plaintiff was working for Defendants, she participated in the statutorily protected activity of opposing discriminatory practices by complaining of the negative and disparate treatment to which she was being subjected, by regularly complaining to Human Resources, Mr. Unruh, and Mr. Martin. Plaintiff formally complained to Human Resources in September 2019, complaining of Mr. Bowman's hostile treatment towards her based on her gender. Therefore, Plaintiff was a covered individual.

89.     After Plaintiff engaged in such statutorily protected activity, Defendants retaliated against her for exercising her protected rights by taking adverse action against Plaintiff by terminating her employment.

90.     As a direct and proximate result of Defendants' actions and/or inaction, Defendants deprived Plaintiff of income as well as other monetary and non-monetary benefits.

91.     As a direct and proximate result of Defendants' actions and/or inaction, Plaintiff suffered a loss of self-esteem, humiliation, emotional distress, mental anguish, and related compensable damage.

92.     Plaintiff is now suffering, and will continue to suffer, irreparable injury and monetary damage as a result of Defendants' retaliatory practices unless and until the Court grants her relief.

93.     Defendants failed to make good faith efforts to establish and to enforce policies to prevent illegal discrimination against their employees, including retaliation for making complaints of discrimination.

94.     Defendants failed to properly train and/or otherwise inform their supervisors and employees of their duties and obligations under applicable civil rights laws, including Title VII.

95.     Through their failure to take prompt and effective remedial action, in effect, Defendants condoned, ratified, and/or authorized the discrimination and harassment against Plaintiff.

96.     Defendants' conduct was willful, wanton, malicious, and showed a complete indifference to or conscious disregard for the rights of others, including Plaintiff's rights. Thus, an award of punitive damages in an amount sufficient to punish Defendants or to deter Defendants and others from like conduct in the future is warranted.

97.     Plaintiff is entitled to recover reasonable attorneys' fees and court costs from Defendant.

**WHEREFORE**, Plaintiff requests that the Court enter judgment in her favor and against Defendants for such damages, actual, nominal, and punitive as are fair and reasonable, for

her reasonable attorney's fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

## COUNT IV
### Violation under 42 U.S.C. 12101 *et seq.* - Disability

98.     The above paragraphs are incorporated as though fully set forth herein.

99.     At all relevant times herein, Plaintiff was qualified for her position of employment with Defendants and performed the duties and responsibilities of her job satisfactorily.

100.    Plaintiff suffers from hypothyroidism and anxiety. Plaintiff's medical conditions substantially limit one or more major life activities, and/or she is regarded as having such a disability.

101.    With reasonable accommodations, Plaintiff's medical conditions did not interfere with her ability to perform up to the standards of Defendants.

102.    Plaintiff's impairments are disabilities and/or Defendants regarded Plaintiff's conditions as disabilities under the ADA, 42 U.S.C. 12101 *et seq.*

103.    By virtue of her disabilities and/or perceived disabilities, Plaintiff is a member of a class of persons protected by the ADA, 42 U.S.C. §12101 *et seq.*

104.    Defendants discriminated against Plaintiff in the terms and conditions of her employment on the basis of her disabilities, in violation of the ADA, 42 U.S.C. §12101 *et seq.* as amended.

105.    Defendants subjected Plaintiff to disparate treatment because of her disabilities by subjecting Plaintiff to unwelcome harassment and terminating Plaintiff's employment with Defendants.

106.    Defendants knew or should have known of the harassment and disparate treatment and failed to take appropriate action to prevent such discrimination.

107.    Defendants subjected Plaintiff to discrimination that affected a term, condition, and/or privilege of her employment.

108.    Defendants intentionally and unlawfully discriminated against Plaintiff on the basis of her disabilities or perceived disabilities.

109.    As a direct and proximate result of Defendants' actions and/or inactions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits associated with Plaintiff's employment with Defendants.

110.    As a direct and proximate result of Defendants' actions and/or inactions, Plaintiff has suffered humiliations, a loss of self-esteem, emotional distress and mental anguish, and other related compensatory damages.

111.    Defendants failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including discrimination based on disability status.

112.    Defendants failed to properly train and/or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including the ADA.

113.    By failing to take prompt and effective remedial action, in effect, Defendants condoned, ratified, and/or authorized the discrimination against Plaintiff.

114.    Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendants or to deter Defendants from like conduct in the future.

115.    Plaintiff is entitled to recover from Defendants reasonable attorneys' fees and court costs.

**WHEREFORE**, Plaintiff requests that the Court enter judgment in her favor and against Defendants for such damages, actual, nominal, and punitive as are fair and reasonable, for her reasonable attorney's fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

## COUNT V
### Violation under 42 U.S.C. 12101 *et seq.* – Disability Retaliation

116. The above paragraphs are incorporated as though fully set forth herein.

117. Plaintiff is a member of a class of persons protected by the ADA, 42 U.S.C. §12101 *et seq.* by virtue of her status as a person with a disability or perceived disability.

118. At all relevant times herein, Plaintiff was qualified for her position of employment with Defendants and performed the duties and responsibilities of her job satisfactorily.

119. While Plaintiff was working for Defendants, she participated in the statutorily protected activity of opposing discriminatory practices by complaining to Defendants about discrimination, harassment, and disparate treatment based on her membership in a protected class. Therefore, Plaintiff was a covered individual.

120. Defendants became aware of Plaintiff's opposition to the unlawful discrimination when Plaintiff complained to human resources and management both orally and in writing. As such, Defendants were aware of Plaintiff's protected activity and opposition to illegal practices.

121. After Plaintiff engaged in such statutorily protected activity, Defendants retaliated against her for exercising her protected rights by terminating Plaintiff's employment.

122. As a direct and proximate result of Defendants' actions and/or inactions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits associated with Plaintiff's employment with Defendants.

123.    As a direct and proximate result of Defendants' actions and/or inactions, Plaintiff has suffered humiliation, a loss of self-esteem, emotional distress and mental anguish, and other related damages.

124.    Defendants failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination and retaliation against its employees, including retaliation based on her complaints of discrimination.

125.    Defendants failed to properly train and/or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including the ADA.

126.    By failing to take prompt and effective remedial action, Defendants effectively condoned, ratified, and/or authorized the discrimination, harassment, and retaliation against Plaintiff.

127.    Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendants or to deter Defendants from like conduct in the future.

128.    Plaintiff is entitled to recover from Defendants reasonable attorney's fees and court costs.

**WHEREFORE**, Plaintiff requests that the Court enter judgment in her favor and against Defendants for such damages, actual, nominal, and punitive as are fair and reasonable, for her reasonable attorney's fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

<u>COUNT VI</u>
**29 U.S.C. § 2601, *et seq.* - Family and Medical Leave Act of 1993
Retaliation**

129.   The above paragraphs are incorporated as though fully set forth herein.

130.   At all relevant times, Plaintiff was employed for at least twelve months by Defendants, the employer to whom leave was requested, and was employed for at least 1,250 hours of service with Defendants during the twelve-month period immediately preceding her requested leave and was therefore an "eligible employee" as that term is defined under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2611(2).

131.   At least fifty employees were employed within seventy miles of Defendants' worksite where Plaintiff worked.

132.   At all relevant times, Defendants were engaged in commerce or in an industry or activity affecting commerce, and employed fifty or more employees for each working day during each of twenty or more calendar workweeks in the current or preceding calendar year, and were therefore "employers" as that term is defined by the FMLA, 29 U.S.C. § 2611(4)(A)(i).

133.   Plaintiff was an eligible employee for FMLA leave; Defendants were employers under the FMLA; Plaintiff was entitled to leave under the FMLA; Plaintiff provided sufficient notice to Defendants of her intent to take FMLA leave and did take leave pursuant to 29 U.S.C. § 2601, *et seq.*, and 29 U.S.C. § 2612(a) and 29 C.F.R. § 825.113 and/or 825.115.

134.   The FMLA makes it unlawful for any employer to interfere with, restrain, or deny the exercise of any right provided by the FMLA.

135.   An eligible employee who takes FMLA leave is protected from retaliation or other harassing or discriminatory treatment.

136.    Plaintiff complained to Defendants about the harassment and hostile treatment she was experiencing as a result of taking FMLA.

137.    Defendants retaliated against Plaintiff for complaining FMLA violations and for taking FMLA leave by terminating her employment. Plaintiff was selected for termination over a less qualified employee with much shorter tenure who was being trained by Plaintiff and who had not taken FMLA.

138.    Defendants lacked good faith in their treatment of Plaintiff for exercising her rights under the FMLA.

139.    Plaintiff's termination under the circumstances set out herein was prohibited by the FMLA.

140.    Defendants' actions against and treatment of Plaintiff were those which a reasonable employee would have found materially adverse.

141.    As a direct and proximate result of Defendants' actions and/or inactions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

142.    Defendants' retaliatory termination of Plaintiff's employment constitutes a willful violation of the FMLA.

143.    Plaintiff is entitled to recover from Defendants her reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendants for such damages, including liquidated damages, which will fully and fairly compensate her for her injuries and damages, for her reasonable attorneys' fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury of all issues so triable.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby designates the United States District Court for the District of Kansas at Kansas City, Kansas as her place of trial.

Dated: July 26, 2021

Respectfully submitted,

/s/ Kathryn Rickley
Kathryn S. Rickley, KS #23211
/s/ Matthew Osman
Matthew E. Osman, KS #23563
OSMAN & SMAY LLP
7111 W. 151st St., #316
Overland Park, Kansas 66223
1-913-667-9243 (Phone)
1-866-470-9243 (Fax)
krickley@workerwagerights.com
mosman@workerwagerights.com

**ATTORNEYS FOR PLAINTIFF**